**PRINTING SPECIALTIES AND PAPER CONVERTERS UNION, LOCAL 388, A. F. L., et al. v. LE BARON, Regional Director of National Labor Relations Board.**

No. 11894.

United States Court of Appeals Ninth Circuit.

Dec. 13, 1948.

Rehearing Denied Jan. 19, 1949.

332

Robert W. Gilbert and Allan L. Sapiro, both of Los Angeles, Cal., and Clarence E. Todd, of San Francisco, Cal., for appellants.

Robert N. Denham, Gen. Counsel, David P. Findling, Associate Gen. Counsel, and Winthrop A. Johns, Dominick L. Manoli, and Albert Dreyer, Attys., N. L. R. B., all of Washington, D. C., for appellee.

Before HEALY and BONE, Circuit Judges, and BOWEN, District Judge.

HEALY, Circuit Judge.

Section 10(l) of the National Labor Relations Act, as amended by the Labor Management Relations Act of 1947, § 101, commonly known as the Taft-Hartley Act, 29 U.S.C.A. § 160(l), provides in substance that when a charge is made that any person has engaged in an unfair labor prac-

tice within the meaning of paragraph (4) (A), (B), or (C), of § 8(b), 29 U.S.C.A. § 158(b) (4) (A–C), a preliminary investigation of such charge shall be made forthwith. If, after investigation, the Board's representative to whom the matter may be referred has reasonable cause to believe the charge is true and that a complaint should issue, he shall, on behalf of the Board, petition the district court for appropriate injunctive relief pending the final adjudication of the Board with respect to the matter. The court is given jurisdiction to grant such injunctive relief as it deems just and proper. The provisions of § 8(b) (4) (A), here pertinent, are copied on the margin.[1]

The proceeding below was instituted by appellee, a regional director of the Board, pursuant to § 10(*l*). His petition states that Sealright Pacific, Limited, had filed a charge alleging that the appellant Union and its agent, Turner, had engaged in unfair labor practices affecting commerce, as those terms are defined in the Act; that the charge had been referred to appellee for investigation; and that after the making of a preliminary inquiry he has reasonable cause to believe the charge is true and that a complaint should issue. An injunction restraining the practices was prayed pending final adjudication by the Board.

The petition discloses that Sealright is engaged at Los Angeles in the manufacture, sale, and distribution of paper food containers, a large part of which it ships in interstate commerce. On November 3, 1947, the Union called a strike of its members employed by Sealright in support of its demands with respect to terms and conditions of employment. Thereafter Turner, speaking for the Union, informed the Los Angeles-Seattle Motor Express, Inc., a common carrier which transports Seal-

right's products, that if it continued to handle these products the Union would picket them. On November 14 the Union followed two trucks loaded with Sealright's products to the terminal of Los Angeles-Seattle and there formed a picket line around the trucks. Representatives of the Union forming the picket line informed the employees of Los Angeles-Seattle that the trucks contained hot cargo and told or requested them not to handle it. As a result of the picketing the employees of Los Angeles-Seattle refused and continued to refuse to handle or transport Sealright's products. On November 17, and thereafter, the Union placed a picket line around three freight cars at the docks of the West Coast Terminals Company at Long Beach, upon which rolls of paper consigned to Sealright were being loaded, with the result that the employees of West Coast refused to handle the goods consigned to Sealright. The purpose of the Union's conduct, it is alleged, was to require Los Angeles-Seattle and West Coast to cease handling and transporting the goods and products of Sealright. The petition does not indicate that in either instance the picketing was otherwise than peaceful.

Appellants moved to dismiss the petition on the ground that the provisions of the Act relied on are violative of the First, Fifth, and Thirteenth Amendments to the Constitution. In addition they submitted an affidavit which does not in any material respect contravert the facts alleged in the petition. The motion was overruled, findings were made, and an order was entered enjoining the Union and its representatives from engaging in the conduct proscribed by § 8(b) (4) (A) of the Act. This appeal followed.

The debate here is whether peaceful picketing may constitutionally be confined by legislation to the area of indus-

---

[1] "(b) It shall be an unfair labor practice for a labor organization or its agents—

\*       \*       \*       \*       \*       \*

"(4) to engage in, or to induce or encourage the employees of an employer to engage in, a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is: (A) forcing or requiring any employer \* \* \* or other person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person."

29 U.S.C.A. § 158.

trial dispute, or, in plainer English, to the premises of the employer with whom the dispute is in progress. It is of course settled by repeated decisions of the Supreme Court that picketing, when resorted to peacefully for the legitimate purpose of publicizing grievances, is within the protection of the First Amendment. Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L. Ed. 1093; Carlson v. California, 310 U.S. 106, 60 S.Ct. 746, 84 L.Ed. 1104; American Federation of Labor v. Swing, 312 U.S. 321, 61 S.Ct. 568, 85 L.Ed. 855. Congress has now undertaken, in the exercise of its power under the Commerce Clause, art. 1, § 8, cl. 3, to prohibit altogether or sharply to curtail the use by labor organizations of certain economic weapons which they have heretofore freely employed. In an effort to narrow the area of industrial strife, and thus to safeguard the national interest in the free flow of commerce, it has in effect banned picketing when utilized to conscript in a given struggle the employees of an employer who is not himself a party to the dispute. Such we understand to be the purport of § 8(b) (4) (A) of the Act.

■ The picketing in this instance falls plainly within the terms of that statute. Its primary object was to induce the employees of Los Angeles-Seattle and West Coast to engage in a concerted refusal to handle Sealright's goods and thus to force their employers to cease handling or transporting the same. There can be no doubt about that any more than there can be doubt of the success of the endeavor. Appellants say they were merely picketing Sealright's product and were not engaged in a secondary boycott as that term is commonly understood. The statute, however, does not use the terms "hot cargo," "picketing the product," or "secondary boycott." It broadly sweeps within its prohibition an entire pattern of industrial warfare deemed by Congress to be harmful to the public interest.

It is argued that this view fails to give effect to § 8(c) of the amended Act. That section provides: "The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this Act, if such expression contains no threat of reprisal or force or promise of benefit."

■ The section is inapplicable. Cf. United Brotherhood of Carpenters & Joiners of America v. Sperry, 10 Cir., 1948, 170 F.2d 863. It is known to all the world that picketing may comprehend something other than a mere expression of views, argument or opinion. As conducted here it constituted an appeal for solidarity of a nature implying both a promise of benefit and a threat of reprisal. The reluctance of workers to cross a picket line is notorious. To them the presence of the line implies a promise that if they respond by refusing to cross it, the workers making the appeal will in turn cooperate if need arises. The converse, likewise, is implicit. "Respect our picket line and we will respect yours." In this setting the picket line is truly a formidable weapon, and one must be naive who assumes that its effectiveness resides in its utility as a disseminator of information. The wisdom or policy of circumscribing the use of the weapon is not, of course, a matter with which the courts are entitled to concern themselves.

■ It remains to inquire briefly whether the Act, as so construed, infringes the constitutional right of free speech.[2] We think the decision in Carpenters and Joiners Union of America, Local No. 213 v. Ritter's Cafe, 315 U.S. 722, 62 S.Ct. 807, 86 L.Ed. 1143, answers the question in the negative.[3] In substance the Court held that the state has the right to determine whether the common interest is best served by imposing restrictions upon the use of weapons for inflicting economic injury in the struggle of conflicting industrial forces. "It is true," said the Court (315 U.S. at page 727, 62 S.Ct. at page 810, 86 L.Ed.

---

[2] The claim that the injunction subjects workers to involuntary servitude as prohibited by the Thirteenth Amendment is patently groundless.

[3] Cf., also, United Brotherhood of Carpenters and Joiners of America v. Sperry, supra.

1143), "that by peaceful picketing working-men communicate their grievances. As a means of communicating the facts of a labor dispute peaceful picketing may be a phase of the constitutional right of free utterance. But recognition of peaceful picketing as an exercise of free speech does not imply that the states must be without power to confine the sphere of communication to that directly related to the dispute. Restriction of picketing to the area of the industry within which a labor dispute arises leaves open to the disputants other traditional modes of communication." And the Court added that the adoption of a contrary view would compel the state "to allow the disputants in a particular industrial episode to conscript neutrals having no relation to either the dispute or the industry in which it arose."

Appellants insist that under the holding in Bakery and Pastry Drivers and Helpers Local No. 802 etc. v. Wohl, 315 U.S. 769, 62 S.Ct. 816, 86 L.Ed. 1178, picketing directed at the product of the employer is within the area of free speech guaranteed by the First Amendment. The circumstances of that case were peculiar and the decision was influenced by the extraordinary nature of the facts involved. The Court thought it was practically impossible for the union to make known its legitimate grievances except by the means there employed and contemplated. And it observed that "A state is not required to tolerate in all places and all circumstances even peaceful picketing by an individual."

Two other points will be noticed. It is claimed that § 8(b) (4) (A) is void for vagueness and uncertainty. While the statute is by no means a model of draftmanship, it is clear enough to embrace the facts of this case and we think sufficiently clear to enable the Board and the courts to administer it. A final contention is that § 10(l) violates Article III of the Constitution, in that it calls upon the courts to exercise non-judicial functions. This argument has been adequately answered by the Second Circuit in Douds v. Local 1250, Retail & Wholesale Department Store Union, 2 Cir., 170 F.2d 695.

Affirmed.