**BULCKE et al. v. GRAHAM.**

No. 2250.

United States District Court
W. D. Washington N. D.

May 6, 1949.

---

Caughlan & Hatten and Merle D. Cohn, Seattle, Wash., for plaintiffs.

Patrick H. Walker, Seattle, Wash., for defendant.

BLACK, District Judge.

In this action Erland Pearson, individually and as an officer of and for and on behalf of International Longshoremen's and Warehousemen's Union, Local 16, an unincorporated association, seeks to have this Court in the Western District of Washington enjoin the defendant, Thomas Graham, individually and as Regional Director of the National Labor Relations Board from proceeding in the District Court for the Territory of Alaska seeking any injunction or injunctive relief restraining the peaceful picketing by plaintiff against the Juneau Spruce Corporation.

The problem presented is intriguing. In brief, the plaintiff is asking this United States District Court for the Western District of Washington to enjoin the defendant from trying to exercise authority in Alaska, which at least apparently the defendant would have the right to exercise in any state of the union if the parties and acts were in such state. Technically the law involved may be cited as the Labor-Management Relations Act of 1947. Properly and practically, it may be referred to as the Taft-Hartley Act.

The plaintiff's position is that it is only seeking in this Court to restrain the defendant from going to an Alaska court where he has no right to go and there seek injunctive relief from the Alaska Territorial Court, which plaintiff says has no jurisdiction or power to act to restrain and enjoin the plaintiff from peaceful picketing. The defendant's answer in effect is that defendant under the law has a duty to seek relief from the Alaska court, the Alaska

court has jursidiction and power to act, and that the defendant is anxious to have the plaintiff restrained from violating Section 8(b) (4) (D) of the Labor-Management Relations Act of 1947, being Title 29 U.S. C.A. § 141 et seq., 158(b) (4) (D), and as I have previously stated, always properly and practically always by attorneys referred to as the Taft-Hartley Act.

Plaintiff in reply states that plaintiff in no wise is guilty of any violation of Section 8(b) (4) (D) of said Act, that all it is doing is engaging in peaceful picketing for the purpose of exercising the constitutional right of free speech to give notice of its views and without purpose to violate the Act and also without accomplishing any of the evils which the Act is, according to its language, intended to prevent.

Both sides concede that for many months the Juneau Spruce Corporation, in spite of such picketing as plaintiff has engaged in, has been operating, and that the employees of the Corporation, members of International Woodworkers of America, Local M-271, have continued to serve the Corporation. Interestingly, plaintiff is representative of a CIO union, and International Woodworkers of America are members of another CIO union. As a result, the defendant argues that plaintiff's actions are in violation of Section 8(b) (4) (D) of the Act, which in substance says,

"It shall be an unfair labor practice for a labor organization or its agents to engage in, or to induce or encourage the employees of any employer to engage in * * * concerted refusal in the course of their employment to * * * work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is * * * forcing or requiring any employer to assign particular work to employees in a particular labor organization * * * rather than to employees in another labor organization * * * unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work or task."

It is clear from the affidavits in this case that the Juneau Spruce Corporation has a contract with the Workworkers Union providing for the Woodworkers doing the particular service in connection with the loading of barges that plaintiff contends should be performed by the Longshoremen's Union and by no one else.

As far as both parties before the Court are concerned, they seem with considerable unanimity to agree that the Alaska court will accept jurisdiction. Plaintiff indicates that the Alaska court not only will accept jurisdiction of an application by a representative of the Board for an injunction, but that the Alaska court will issue the injunction, all to plaintiff's irreparable injury.

I have before me the text of a recent decision by the Court of Appeals for the Ninth Circuit entitled "Printing Specialties and Paper Converters Union, etc., et al, v. LeBaron, Regional Director of the Twenty-First Region, N.L.R.B.," filed December 13, 1948, and found in 171 F.2d 331, 335. In the last paragraph of this decision this language is found, "The statute (referring to the Taft-Hartley Act) is by no means a model of draftsmanship." I don't believe any impartial person reading the Act can disagree with that characterization by Judge Healy speaking for the Court of Appeals. Undeniably, the language of the statute as enacted has many variations in respect to what courts have authority to act. Apart from reference to the Court of Appeals or the Circuit Court of Appeals, as it was known when the Act was enacted, the Act refers to District Courts of the United States, including the District Court of the United States for the District of Columbia one time, somewhere else to the District Courts of the United States, in some other part to the District Courts of the United States, the Courts of the United States for the Territories and Possessions, and elsewhere to some different combination in part or whole of the District Courts of the United States, the District Court of the District of Columbia, the Courts of the United States for the Terri-

618

tories, and the Courts of the United States for the Possessions. Such distinctions as the Act makes with reference to the court that shall have power to act or which shall be applied to very naturally produce disagreement between respective interests. While this Act was intended to remove confusion from matters affecting the employer, the employees and the public, it cannot be denied that those who do not favor the Act can at least with some degree of persuasion argue that instead of the Act removing confusion it does manage to confound confusion.

I confess inability to recognize that a certain ruling by Judge Folta of an Alaska Territorial Court in the area where plaintiff resides and where the local union he represents has its principal place of business and in which Judge Folta held that his Court was a proper court for an action by the Juneau Spruce Corporation against this local union for damages, is res adjudicata in this proceeding.

That action was only between the union represented by plaintiff and the Corporation, which is not a party here. The defendant in this action was not a party there. Such rights as the defendant has here to institute an action in the Alaska Territorial Court is under Section 10 of the Taft-Hartley Act, 29 U.S.C.A. § 160. Such right as the Juneau Spruce Corporation had to bring this action was stated by Judge Folta to have been under Section 303 of the Taft-Hartley Act, 29 U.S.C.A. § 187.

So we have different parties and different sections, and when we compare Section 303 with Section 10 we find quite different language. So with no trouble at all I say there is no res adjudicata in the proceeding.

Second, the defendant contends that the decision of Judge Folta constitutes stare decisis, establishing the right of defendant to proceed before the Alaska Court. If a decision by Judge Folta under Section 303 on a demurrer constitutes stare decisis as to the rights of the defendant under an altogether different section with different wording, then I must confess complete lack of understanding of the doctrine of stare

decisis I must hold that the right of defendant to maintain an injunction proceeding under Section 10 in no wise has the support of any doctrine of stare decisis.

I have read with interest the opinion of Judge Folta. It testifies to much thought and anaylsis of the Act. I do not know that I disagree with his conclusion that the Juneau Spruce Corporation had the right to bring the action it brought in the Alaska court. It seems to me that he could have arrived at that conclusion very simply by reference to the appropriate portion of Section 303 involved, which reads:

Section 303. Subdivision (b). "Whoever shall be injured in his business or property by reason of any violation of subsection (a) may sue therefor in any district court of the United States subject to the limitations and provisions of Section 301 hereof, without respect to the amount in controversy, or in any other court having jurisdiction of the parties, and shall recover the damages by him sustained and the cost of the suit."

I do not see why the decision as to the action by the Corporation against the Union might perhaps not have been sustained upon the ground that even though the Alaska Territorial Court was not a District Court of the United States that it at least was included in the language, "or in any other court having jurisdiction of the parties." Certainly, the Corporation and the Union were in the district of that Alaska Territorial Court, and without belaboring the point, it would seem on a casual analysis that it would not have been surprising for Judge Folta to have held that his court was at least "another court having jurisdiction of the parties."

I am not sure that the decision of Judge Folta establishes at all that he will deny to the plaintiff in this action a real opportunity to argue before him in any action the defendant might bring in Alaska that under Section 10 the Alaska court has no jurisdiction. I cannot escape the fact that both parties here have seemed to think that Judge Folta has decided the particular issue in favor of the Director and against the Union. Some of the language which

he uses in his opinion overruling the demurrer in the Corporation's case undoubtedly would so indicate. But there is nothing to prevent the Union from calling his attention to the fact that the decision could be entirely correct as to the Corporation's case without in any wise authorizing him to consider that he had jurisdiction of any application the Director would make for an injunction. I am not saying at all that Judge Folta will hold that his Alaska court has no jurisdiction. I am merely saying that his holding under Section 303 in no wise compels him to hold against the Union under Section 10. This Court must assume that he will ultimately, when it considers the particular matter carefully, make the correct decision even though such decision might be a little embarrassing to him in the light of any language he may have used in another and entirely different case.

I may confess to counsel on both sides that there is much persuasion in the argument of Mr. Caughlan that Congress did not give to the Alaska court authority to issue the injunction that the defendant confessedly intends to soon ask for. I wish no misunderstanding of what I have said. I did not at all say that I thought the Congress had not granted that authority. I merely said there was much persuasion in Mr. Caughlan's argument. And at this point I may say that it is truly regrettable that Congress was so inept in various sections of the statute in specifying different courts in the event Congress intended when it specified different courts that always the same courts were nevertheless intended.

It is not my problem to decide whether the Alaska court has jurisdiction. I am merely holding that the Alaska court has not necessarily decided the question. This Court should be very slow to hold in advance that some other court with as able a judge as Judge Folta is reputed to be will be completely in error in determining his jurisdiction under this new law.

Looking at the matter realistically, I must confess that there is considerable probability that the defendant is right when he argues that there is a jurisdictional dispute involved. I am much of the opinion that if we were anywhere except in a court itself, that any practical person speaking of the situation would naturally at least, whether with technical accuracy or not, refer to the issue in Alaska as a jurisdictional dispute. Technically, the plaintiff says that the Union is picketing the premises of the Juneau Spruce Corporation to exercise its right of free speech. If that is all it wishes to do, I do not see how it would be irreparably injured in being denied that right after a year because, certainly, in the more than a year that the Juneau Spruce Corporation has been picketed, the officers and stockholders of that Corporation have learned that the Longshoremen's Union is not in sympathy with its contract or its conduct with respect to the Woodworkers Union. Certainly by now the Woodworkers Union has been substantially advised of the Longshoremen's attitude.

I am inclined to think that I have jurisdiction of the matter. While not ruling on the question, I am inclined to believe that I would have the power to issue the injunction the plaintiff asks. But assuming that I have jurisdiction and the power, certainly, this Court should only act under most extraordinary circumstances to prevent an official of the government from at least trying to get relief from apparently the only trial court that would have any authority over the plaintiff. I do not find that extraordinary situation existing that would make me feel justified in issuing the injunction or restraining order sought by plaintiff. Under the showing made by the defendant, the defendant certainly would have the right to do what the defendant intends to do if the Alaska court has jurisdiction. If the Act was sufficiently ineptly drawn as not to give the Alaska court jurisdiction, I would assume that the Alaska court can determine that question as correctly as can I. If the Alaska court decides that question incorrectly, the unsuccessful party has the right to ask a proper decision from the Court of Appeals for the Ninth Circuit or to seek an extraordinary remedy from that Court of Appeals. The only problem for me to solve is whether

620

or not I should restrain the defendant from trying to do what he understands is his duty under this law. Under all the circumstances I see only one solution of that problem, and that is that I should not interfere.

I am not at all indicating that the Alaska court does or does not have jurisdiction. I have made it plain that I am not nearly as convinced as is the defendant that the Alaska court has jurisdiction. Since the plaintiff here is a resident of Alaska, since the union involved is doing whatever business it is doing in Alaska, whether such is as bad as the defendant asserts there is reasonable cause to believe, or whether it is as rightful as plaintiff insists, and since apparently from a practical standpoint whatever action the defendant takes must be taken in Alaska, it seems clear to me that I should not take unto myself, in effect, the extraordinary power of the Court of Appeals to, for practical purposes, issue a writ of prohibition.

The restraining order or injunction sought is denied.