NATIONAL LABOR RELATIONS BOARD v. UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, DISTRICT COUNCIL OF KANSAS CITY, MO., A. F. OF L., et al.

No. 3969.

United States Court of Appeals
Tenth Circuit.

Aug. 14, 1950.

Dominick L. Manoli, Washington, D. C. (Robert N. Denham, David P. Findling, and A. Norman Somers, all of Washington, D. C., on the brief), for petitioner.

Clif. Langsdale, Kansas City, Mo. (John J. Manning, Kansas City, Mo., on the brief), for respondents.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

In presently pertinent part, section 8(b) (4)(A) of the National Labor Relations Act, 49 Stat. 449, as amended by the Labor-Management Act, 61 Stat. 136, 29 U.S. C.A. § 158(b)(4)(A), provides in effect that the establishment of a secondary boycott shall constitute an unfair labor practice. And section 8(c), 29 U.S.C.A. § 158(c) provides in substance that the expressing of views, argument, or opinion, or the dissemination thereof, shall not constitute or be evidence of an unfair labor practice, if such expression contains no threat of reprisal or force or promise of benefit.

Pursuant to a charge filed jointly by Klassen & Hodgson, Inc., hereinafter referred to as Klassen, and Wadsworth Building Company, Inc., hereinafter referred to as Wadsworth, the National Labor Relations Board, hereinafter referred to as the Board, issued its complaint in which it was charged that United Brother-hood of Carpenters and Joiners of America, District Council of Kansas City, Missouri, and vicinity, affiliated with the American Federation of Labor, sometimes hereinafter referred to as Carpenters, and Walter A. Said, sometimes hereinafter referred to as Said, established a secondary boycott against Klassen for the purpose of compelling it to cease doing business with Wadsworth. Shortly after the issuance of the complaint, the regional director of the Board filed in the United States Court for Kansas his petition for injunctive relief pending final adjudication by the Board of the proceeding then pending before it. The court entered judgment granting relief substantially as prayed, and the judgment was affirmed. United Brotherhood of Carpenters, etc. v. Sperry, 10 Cir., 170 F.2d 863. By answer filed in the proceeding pending before the Board, Carpenters and Said denied that they had engaged or were engaged in any unfair labor practice and they pleaded that the complaint failed to state facts vesting the Board with jurisdiction of the subject matter and of the respondents. After a full hearing, the Board found that respondents induced and encouraged employees of Klassen and employees of other employers to engage in a concerted refusal to handle goods or perform services for Klassen, an object thereof being to force Klassen to cease doing business with Wadsworth. And the Board made subsidiary findings of fact. Among other things, it found in substance that Wadsworth was engaged at Overland Park, Kansas, in the business of manufacturing prefabricated houses; that during the year preceding the hearing Wadsworth purchased raw materials valued at approximately $200,000 and sold finished products valued at approximately $270,000; that from ninety to ninety-five per cent of such raw materials were shipped to Wadsworth from sources outside the State of Kansas and about fifty per cent of such finished products were shipped into the State of Missouri; that employees of Wadsworth who were represented by Carpenters went on strike and pickets were placed at the entrances to the Wadsworth plant; that some-

time prior to the strike at the Wadsworth plant, Klassen entered into a contract with Wadsworth for the purchase of some fifteen prefabricated houses valued at approximately $55,000; that shortly after the strike at the Wadsworth plant, Klassen received and began the erection of one of the houses at Overland Park; that a carpenter belonging to the local union and other persons not belonging to a union were employed in connection with the erection of the house; that Said as the representative of Carpenters and others representing other local unions visited the premises and talked with Harry H. Klassen and George N. Hodgson, explaining the labor dispute with Wadsworth, urging Harry H. Klassen and George N. Hodgson to cease the purchase and erection of Wadsworth houses, and urging them to bring pressure on Wadsworth to come to terms with its employees represented by Carpenters; that after such conference Said talked with the carpenter belonging to the union and working at the Klassen job; that Said and the carpenter talked on the telephone that night; that the carpenter left the job the following morning; that Klassen was placed on a "we do not patronize list" which was given wide circulation among those interested in the building industry; that a picket was placed at the Klassen job; that truck drivers refused to cross the picket line and deliver materials; that prior to the hearing the erection of a second house was begun; and that the erection of the houses was hindered and delayed. The Board entered its order directing the respondents to cease and desist from such unfair labor practices, to withdraw support and sponsorship of the picketing of the Klassen building project, to notify the carpenter belonging to the union that he was free to work for Klassen without prejudice to his rights, privileges, and standing in the union, to post conventional notice of compliance with the order, to send copies of the notice to the local unions affiliated with Carpenters and certain other labor organizations, and to send a copy of the notice to the union carpenter. The Board petitioned this court for enforcement of its order, and respondents filed an answer resisting enforcement.

Respondents urge the contention that if section 8(b)(4)(A), supra, makes unlawful their activities involved in this proceeding, it contravenes the first, fifth, and thirteenth amendments to the Constitution of the United States. The Contention is not well taken and does not call for extended discussion. It is sufficient to say that this court sustained the constitutional validity of the statute when applied to the facts involved here, United Brotherhood of Carpenters, etc. v. Sperry, supra; and other courts have expressly sustained its constitutional validity when applied to facts fairly comparable to those presented here. Printing Specialties and Paper Converters Union v. Le Baron, 9 Cir., 171 F.2d 331; International Brotherhood of Electrical Workers v. National Labor Relations Board, 2 Cir., 181 F.2d 34.

Respondents advance the further contention that section 8(c) of the Act immunizes their acts and conduct now in question from the reach of section 8(b)(4)(A). Section 8(c) concerns itself only with the expression of views, argument, or opinion, or the dissemination thereof. and by express language it is limited to the expression of views, argument, or opinion, or the dissemination thereof, which do not contain any threat or reprisal or force or promise of benefit. According to the findings of the Board, respondents went far beyond that. By coercive methods, they caused one employee of Klassen to quit his job. They established a picket at the building project of Klassen. And they placed Klassen on a so-called blacklist and gave wide circulation of the fact among those particularly interested in the building industry, all for the purpose of compelling Klassen to cease doing business with Wadsworth. There is nothing in the language or legislative history of section 8(c) which indicates pursuasively a Congressional intent to create an asylum of immunity from the proscription of section 8(b)(4)(A) for acts and conduct of that kind. United Brotherhood of Carpenters,

etc. v. Sperry, supra; Printing Specialties and Paper Converters Union v. Le Baron, supra; International Brotherhood of Electrical Workers v. National Labor Relations Board, supra.

Enforcement of the order of the Board is resisted on the ground that the matter involved has become moot and that therefore the court is without jurisdiction to enforce such order. Respondents assert and the Board does not deny that subsequent to the entry of the order Wadsworth entered into a collective bargaining agreement with Carpenters; that the strike of employees of Wadsworth was settled and the pickets at its plant withdrawn; that Carpenters notified all unions and all others interested in the building industry of such settlement and recommended the use of Wadsworth homes; that Klassen ceased doing business and was dissolved; that Harry L. Klassen became a member of the Bricklayers' Union and is working at the bricklayers' trade; and that George N. Hodgson is no longer identified in any manner with the building industry. We may in our discretion consider the facts thus coming into existence after entry of the order of the Board or remand the proceeding to the Board for further consideration. National Labor Relations Board v. Jones & Laughlin Co., 331 U.S. 416, 427, 67 S.Ct. 1274, 91 L.Ed. 1575. No good purpose would be served by remanding the proceeding. On the contrary, the objectives of the Act, as amended, and the interests of the parties will be best served by this court expediting final disposition of the proceeding rather than delaying its ultimate disposition by remanding it to the Board.

■ An order of the kind issued by the Board in this instance, if lawful when issued, does not become moot merely because it has been obeyed. Neither does it become moot merely because changing circumstances indicate a diminution in need for it. And the discontinuance or abandonment of an unfair labor practice after entry of such an order does not deprive the Board of its right to secure an order of enforcement from the court of appeals hav-

ing jurisdiction in the premises. National Labor Relations Board v. Pennsylvania Greyhound Lines, Inc., 303 U.S. 261, 58 S. Ct. 571, 82 L.Ed. 831, 115 A.L.R. 307; National Labor Relations Board v. Mexia Textile Mills, Inc., 339 U.S. 563, 70 S.Ct. 826, 833; National Labor Relations Board v. Pool Manufacturing Co., 339 U.S. 577, 70 S.Ct. 830, 833.

■ The petition for enforcement is resisted on the further ground that the court is without jurisdiction to enforce the order for the reason that the unfair labor practices found to exist did not affect interstate commerce within the meaning of the Act. The argument is that the test prescribed by the Act for jurisdiction of the Board in the first instance and of the courts on petition for enforcement is whether the unfair labor practices involved affect interstate commerce; that only prohibited conduct which unlawfully obstructs or burdens interstate commerce is within the reach of the Act; that the calling of the strike at the Wadsworth plant did not constitute an unfair labor practice; that the extent to which the calling of that strike affected the free flow in interstate commerce of raw materials and finished products to and from Wadsworth was not a matter with which the Act concerns itself; and that therefore such effect upon interstate commerce was no basis for the assertion of jurisdiction on the part of the Board or this court. The strike by employees of Wadsworth and the placing of pickets at the Wadsworth plant was not the unfair labor practice charged in the complaint or found by the Board. The unfair labor practice charged and found to exist was the establishment of a secondary boycott against Klassen for the purpose of compelling it to cease doing business with Wadsworth. And the wrongful establishment of a secondary boycott of that kind constitutes an unfair labor practice which affects interstate commerce within the meaning of the Act. United Brotherhood of Carpenters, etc. v. Sperry, supra; Printing Specialties and Paper Converters Union v. Le Baron, supra; International Brotherhood of Electrical Workers v. National Labor Relations Board, supra.

A further contention urged in resistance to the petition for an order of enforcement is that section 8(b)(4)(A) of the Act which provides in substance that the establishment of a secondary boycott against a third person solely for the purpose of compelling him to cease doing business with the employer with whom a labor disagreement exists is designed to protect innocent third persons from economic loss as the result of a labor dispute in which they have no concern; that Klassen was an ally of Wadsworth and not a neutral or unconcerned employer; and that therefore the establishment of the boycott against Klassen did not constitute an unfair labor practice. The basic purpose and objective of the section of the Act is to prohibit the involvement of employers in labor disputes of other employers with whom they are doing business. Wadsworth and Klassen were completely separate corporations in ownership and management. There was no common ownership of stock, in no instance was a person an officer of both, and so far as the record indicates the only dealings between them related to the sale and purchase of approximately fifteen prefabricated houses to which reference has been made. Klassen was a neutral and unconcerned employer respecting the labor dispute existing between Wadsworth and its employees, within the meaning of the statute. National Labor Relations Board v. Wine, Liquor & Distillery Workers Union, 2 Cir., 178 F.2d 584.

Certain findings made by the Board are challenged. The findings are binding on the court if they are sustained by substantial evidence. National Labor Relations Board v. Crompton-Highland Mills, Inc., 337 U.S. 217, 220, 69 S.Ct. 960, 93 L.Ed. 1320. There is no need to detail at length the evidence tending to sustain the findings of the Board. It is enough to say that the several material findings are sustained by substantial evidence and therefore must stand.

Other contentions are advanced but they are without merit.

A conventional order of enforcement will be entered.