John F. LE BUS, Regional Director of the Fifteenth Region of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

INTERNATIONAL WOODWORKERS OF AMERICA, AFL–CIO, LOCAL S–426; International Woodworkers of America, AFL–CIO, Local S–429; and International Woodworkers of America, AFL–CIO, Respondents.

Civ. A. No. 1206–N.

United States District Court
M. D. Alabama, N. D.
July 16, 1956.

Jacques Schurre, N.L.R.B., Washington D. C., for petitioner.

Helen F. Humphrey, Washington, D. C., and Poole & Poole, Greenville, Ala., for W. T. Smith Lumber Co., intervenor.

Quitman Ross, Laurel, Miss., and Adair & Goldthwaite, Atlanta, Ga., for respondents.

JOHNSON, District Judge.

This proceeding is before the Court upon a verified petition of the Regional

Director of the Fifteenth Region of the National Labor Relations Board, said petition being filed pursuant to § 10(*l*) of the National Labor Relations Act, 29 U.S.C.A. § 160(*l*), as amended, said petition seeking a temporary injunction pending final adjudication by the National Labor Relations Board with respect to the matters involved. The petition was filed after a preliminary investigation of certain charges filed with the Director by the W. T. Smith Lumber Company, said charges alleging that the respondents had engaged in and were engaging in certain unfair labor practices within the meaning of § 8(b), subsection (4) (A) of the Act.[1] The W. T. Smith Lumber Company moved the Court to intervene in this matter, and said motion was granted to the extent that the said lumber company was permitted to participate in said proceeding as provided by § 10(*l*) of the Act. Respondents moved the Court to dismiss said petition, which motion was overruled and denied. Issue was joined on the matters raised in the petition, and a hearing was duly held on July 9, 1956. All parties were afforded an opportunity to be heard, to present evidence, to submit briefs, and to argue the evidence and the law.

After considering the pleadings and evidence, the arguments and briefs of counsel, the Court, upon the entire record, finds that the petitioner is the Regional Director of the Fifteenth Region of the National Labor Relations Board, an agency of the United States, and, pursuant to his authority as such officer, files this petition for and on behalf of the Board. The respondents, International Woodworkers of America, AFL-CIO, Local S-426; International Wood-workers of America, AFL-CIO, Local S-429; and International Woodworkers of America, AFL-CIO, are labor organizations within the meaning of §§ 2 (5), 8(b), and 10(*l*) of the Act, 29 U.S.C.A. §§ 152(5), 158(b), 160(*l*) and are presently engaged within this district in transacting business upon behalf of their employee-members. Sometime prior to this petition being filed, W. T. Smith Lumber Company filed with the Director certain charges alleging that the respondents had engaged in unfair labor practices within the meaning of the sections of the Act as above set out.

The Court further finds that after investigation, the Regional Director concluded there was reasonable cause to believe that the respondents had engaged in said unfair labor practices. From the petition, evidence, and arguments, it is apparent to the Court and the Court finds that said belief was based upon the fact that Smith Lumber Company, an Alabama corporation, was and is engaged at Chapman and Greenville, Alabama, within this judicial district, in the production of lumber and other related products; that during the year 1955 said lumber company sold and shipped products valued at more than one million dollars to points outside the State of Alabama; that sometime during July, 1955, the respondents and Smith Lumber Company became engaged in a labor dispute; that on or about July 20, 1955, the respondents commenced picketing Smith Lumber Company's mills and other establishments in Chapman and Greenville, Alabama; said picketing was engaged in to further the strike against the Smith Lumber Company by the respondents; said strike concerned wages, hours, and other conditions of employment of

1. "Sec. 8(b). It shall be an unfair labor practice for a labor organization or its agents— * * * (4) to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is: (A) forcing or requiring any employer or self-employed person to join any labor or employer organization or any employer or other person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person". 29 U.S.C.A. § 158(b).

Smith's employees. Picket lines and stations have been maintained at all entrances to Smith's mills, both at Chapman and Greenville, so that all of Smith's employees who continued to work had to pass one or more picket lines at least twice a day going to and from their work at Smith's mills. Petitioner is not seeking to enjoin this picketing.

Respondents have also picketed tracks of the Louisville & Nashville Railroad at Chapman and Greenville, Alabama, at and on the interchange tracks. Respondents, through various members while on picket duty on or near the tracks of the railroad, have requested and appealed to, have threatened, coerced, and intimidated certain employees of the Louisville & Nashville Railroad not to handle, transport, or work on freight or products consigned to Smith and not to make available to Smith empty railroad cars to be used for shipping Smith's products. As a result of these acts and this conduct, the employees of the Louisville & Nashville Railroad stopped and refused to perform such services for Smith Lumber Company; said services were performed for Smith Lumber Company by the supervisory personnel of the Louisville & Nashville Railroad from October or November, 1955, until on or about May 8, 1956. Since that time services have been performed by the regular employees of the Louisville & Nashville Railroad when the protection of railroad police and local law enforcement agencies was provided.

The relief prayed for in the petition before the Court is in the nature of an interlocutory injunction, pending final determination of the Board with respect to the unfair labor practices charged and is limited by statute. The Court is not called upon to decide whether, in fact, the charge of unfair labor practices is true, but only to determine whether or not the Director had reasonable cause to believe the charge as filed with him by the Smith Lumber Company was true. The ultimate determination of the truth or falsity of the charge is by statute reserved exclusively for the National Labor Relations Board, subject to appropriate review pursuant to § 10(e, f) of the Act. Schauffler v. United Association of Journeymen, etc., 3 Cir., 218 F.2d 476, 478:

> "Section 10(*l*) provides that if, after investigating 8(b) (4) (A), (B) or (C) charges, 'the officer or regional attorney to whom the matter may be referred has reasonable cause to believe such charge is true and that a complaint should issue, he shall, on behalf of the Board, petition * * * (a United States) district court * * * for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter. Upon the filing of any such petition the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper, notwithstanding any other provision of law * * *'.

> \* \* \* \* \* \*

> "The court below, acting pursuant to this section of the Act, determined that there was '*reasonable cause*' to believe the charge true and enjoined Pipefitters * * * pending the final adjudication by the Board of the matters involved". (Emphasis supplied.)

Shore for and on Behalf of N. L. R. B. v. Building & Construction Trades Council, 3 Cir., 173 F.2d 678, 681:

> "It is to be noted that the District Court was not required to find the charges made to be true, but to find reasonable cause to believe them to be true. Our function is, of course, not to find that the charges made are true or untrue, but to determine whether the court was clearly erroneous in finding reasonable cause to exist".

This Court further finds that the Director had reasonable cause to believe and conclude that the object of respondents' actions and conduct was and is to force or require the Louisville & Nashville Railroad to cease handling, transporting, and doing business with Smith

Lumber Company. The Court further finds that the Director had reasonable cause to believe and conclude that said actions of the respondents, as above enumerated, having occurred in connection with the operations of Smith Lumber Company, have a close and substantial relation to trade, traffic, and commerce among the several states and tend to burden and obstruct commerce and the free flow thereof within the meaning of § 10(a) of the Act.[2] N. L. R. B. v. Denver Building Trades Council, 341 U.S. 675, 683, 71 S.Ct. 943, 95 L.Ed. 1284; International Brotherhood of Electrical Workers v. N. L. R. B., 341 U.S. 694, 71 S.Ct. 954, 95 L.Ed. 1299; Polish National Alliance v. N. L. R. B., 322 U.S. 643, 64 S.Ct. 1196, 88 L.Ed. 1509; N. L. R. B. v. Jones and Laughlin Steel Corporation, 301 U.S. 1, 57 S. Ct. 615, 81 L.Ed. 893.

The Court further finds that the Director had and now has reasonable cause to believe that unless the respondents are restrained they will continue to repeat such actions and that such conduct will continue.

This Court concludes that it has jurisdiction of the parties and the subject matter under the provisions of § 10(*l*) of the Act; that the respondents are labor organizations within the meaning of §§ 2(5), 8(b), and 10(*l*) of the Act. The Court further concludes that there is reasonable cause to believe that the respondents' conduct, as above set out, constitutes a violation of the Act and that there was and is reasonable cause to believe that unless said acts and conduct are restrained they will continue. N. L. R. B. v. United Brotherhood of Carpenters and Joiners of America, 184 F.2d 60, certiorari denied 341 U.S. 947, 71 S. Ct. 1011, 95 L.Ed. 1371; N. L. R. B. v. Fainblatt, 306 U.S. 601, 59 S.Ct. 668, 83

L.Ed. 1014; Printing Specialities and Paper Converters Union v. N. L. R. B., 9 Cir., 171 F.2d 331, 334:

"In an effort to narrow the area of industrial strife, and thus to safeguard the national interest in the free flow of commerce [Congress] has in effect banned picketing when utilized to conscript in a given struggle the employees of an employer who is not himself a party to the dispute. Such we understand to be the purport of § 8(b) (4) (A) of the Act".

International Brotherhood of Electrical Workers v. N. L. R. B., 2 Cir., 181 F.2d 34, 37, affirmed 341 U.S. 694, 71 S.Ct. 954, 95 L.Ed. 1299:

"The gravamen of a secondary boycott is that its sanctions bear, not upon the employer who alone is a party to the dispute, but upon some third party who has no concern in it. Its aim is to compel him to stop business with the employer in the hope that this will induce the employer to give in to his employees' demands".

This Court further concludes that since respondents have engaged in unfair labor practices within the above stated sections of the Act, which practices have affected commerce as above stated, that said respondents should be enjoined and restrained from the commission of said acts and conduct, and like or related acts or conduct, the commission of which in the future may be fairly anticipated from respondents' acts and conduct in the past so that the issues may be preserved for the National Labor Relations Board to determine as the Act provides. Said injunction should remain in force pending the final adjudication by the Board of the matters involved.

2. "Sec. 10. (a) The Board is empowered * * * to prevent any person from engaging in any unfair labor practice (listed in section 8) affecting commerce. * * *"

"Sec. 2. When used in this Act—

* * * * *

"(6) The term 'commerce' means trade, traffic, commerce, transportation, or communication among the several States. * * *.

"(7) The term 'affecting commerce' means in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce. * * *"