NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

LOCAL 101, INTERNATIONAL UNION OF OPERATING ENGINEERS, AFL–CIO, Respondent.

No. 6950.

United States Court of Appeals
Tenth Circuit.

March 12, 1963.

Standau E. Weinbrecht, Washington, D. C. (Stuart Rothman, Dominick L.

Manoli, Marcel Mallet-Prevost and Melvin J. Welles, Washington, D. C., with him on the brief), for petitioner.

John J. Manning, Kansas City, Mo. (Robert S. Fousek, Kansas City, Mo., with him on the brief), for respondent.

Before MURRAH, Chief Judge, and PICKETT and LEWIS, Circuit Judges.

LEWIS, Circuit Judge.

The National Labor Relations Board seeks enforcement of its order of October 31, 1961, requiring the respondent local union to take certain remedial action for unfair labor practice found to have occurred in violation of sections 8 (b) (4) (i) and (ii) (B) of the National Labor Relations Act.[1] The Board order is dependent upon the validity of a finding that the union precipitated a strike at the Forbes Air Force Base Atlas missile site to coerce certain subcontractors at work there to cease doing business with the Corps of Engineers and the Air Force. Such subcontractors were other than Ets-Hokin and Galvin, Inc., complainant herein. Enforcement is resisted by the union upon claim that the evidence does not support the finding and that in any event the controversy is now moot because of excessive delay upon the part of the Board. We find no merit to either contention and direct enforcement of the order.

In August 1960 a jurisdictional dispute arose between the respondent union and Local 304, International Brotherhood of Electrical Workers, AFL-CIO, concerning the assignment of work by Ets-Hokin to members of Local 304. Ets-Hokin had taken over a subcontract at the Forbes site for the installation of communication cables as the successor to the Horton Construction Company, which company had surrendered its contract while in progress. Horton had hired through the respondent union. The change of contractors thus resulted in the Electrical Workers being in and the Operating Engineers being out as far as the particular work was concerned.

To resolve the jurisdictional dispute, the respondent union filed a claim with the National Joint Board for Settlement of Jurisdictional Disputes, Building and Construction Industry, asserting their right to employment in the particular work involved on the site in preference to the Electrical Workers. Although that Board ruled that under standard practices the work should have been assigned to the complainants, Ets-Hokin refused to abide the ruling, asserting that they were not subject to the order of the joint board.[2] The union, however, urged that by directive of United States Air Force Headquarters the work on the project was to be assigned in accordance with standard labor practices.

Ralph Barney, representative of the respondent union, met with government supervisory personnel in an attempt to get them to recognize the ruling of the jurisdictional arbitrators but had no success. He made threats that unless the work was awarded to Local 101 "there would be trouble," and "since the Air Force is not sticking by an agreement, then we are not required to stick by an agreement either."

Barney reported the difficulties he was having to the membership of Local 101 and also to the business agents of other craft unions. Thus, on October 26, all

---

1. 29 U.S.C.A. § 158(b) "It shall be an unfair labor practice for a labor organization or its agents—

   "(4) (i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to * * * perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—

   \*　　\*　　\*　　\*　　\*

   "(B) forcing or requiring any person to cease * * * doing business with any other person, * * *."

2. That neither Ets-Hokin nor Local 304, IBEW, were within the jurisdiction of the National Joint Board is not now disputed.

the members of Local 101 employed by contractors working on the missile site construction failed to report for work and also about 500 members of other building and craft unions stayed away, affecting the work of all the subcontractors on the site. Ets-Hokin's employees, members of Local 304, IBEW, remained on the job. However, Ets-Hokin had subcontracted work hauling and setting manhole covers to Centropolis Transfer, Inc. and that company's employees were members of Local 101.

Ets-Hokin then filed charges with the National Labor Relations Board alleging that the strike constituted a secondary boycott in violation of sections 8(b) (4) (i) and (ii) (B) of the National Labor Relations Act, as amended, and also charging a violation of section 8(b) (4) (D)[3] of the Act. The strike was enjoined by the District Court for the District of Kansas and progress of work at the missile site was thenceforth uninterrupted to completion in all regards. Ets-Hokin used the Electrical Workers through the entire job under shelter of the injunction.

The Labor Board on December 13, 1960 held a hearing upon the charges claiming the respondent union to be in violation of section 8(b) (4) (D) but rendered no decision. At such time the Board had been and was interpreting this section of the Act as neither requiring nor allowing the Board to make an affirmative award of work between employees of unions engaged in a jurisdictional dispute. The interpretation by the Board of its power and duty in such regard was in error as determined by the decision of the Supreme Court made January 9, 1961, in N. L. R. B. v. Radio and Television Broadcast Engineers, 364 U.S. 573, 81 S.Ct. 330, 5 L.Ed.2d 302. The compulsion of the decision required the Board to revise its policy and to review its pending records. On March 28 the Board remanded the matter involving the respondent union to the Regional Director for the purpose of taking further evidence now recognized as relevant to the issues under section 8(b) (4) (D). Since by this time the Forbes project had been completed and an award of work was no longer possible, Ets-Hokin, as complainant, with the affirmative approval of the respondent union moved to withdraw the charges under section 8 (b) (4) (D) as moot. The Board quashed the notice of hearing and thus terminated that proceeding. The remaining charges made under sections 8(b) (4) (i) and (ii) (B) of the Act proceeded to hearing and resulted in the order of October 31, 1961, here sought to be enforced.

■■ Proceeding from the premise that we cannot disturb a finding of fact of the Board if based upon substantial evidence we do not agree with the union's contention that this factual background will support only the potential of an unfair labor practice under section 8(b) (4) (D) of the Act (the issue which was never decided by the Board) and will not support a violation under section 8(b) (4) (B) of the Act. Had the union restrained its sanctions to furtherance of its original object, that is the settlement of the jurisdictional dispute regarding the employees of Ets-Hokin, the case might well fall within the scope of N. L. R. B. v. United Brotherhood of Carpenters, 7 Cir., 261 F.2d 166, and Douds v. International Longshoremen's Ass'n, 2 Cir., 224 F.2d 455. But the record contains substantial evidence that the object of the strike extended beyond the limits of the existing dispute and was intended to, and did, reach employers with whom no disputes existed. The agent for the union, having received assurance from the decision of the National

3. 29 U.S.C.A. § 158(b) (4)
"(D) forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class, unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work: * * *."

Joint Board of the rightfulness of his position, sought but was refused cooperation from the Air Force in the obtaining of actual relief. He thereupon accused the Air Force of breaking its agreement, directly threatened it with "trouble," and pulled his men from the entire project with the intended and actual result of disrupting the relationship between the Air Force and its subcontractors. Such an object, though it may mushroom from an original lawful object, is in violation of section 8(b) (4) (B) of the Act. N. L. R. B. v. Denver Building & Construction Trades Council, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284; International Brotherhood of Electrical Workers, etc. v. N. L. R. B., 341 U.S. 694, 71 S.Ct. 954, 95 L.Ed. 1299.

The union, in urging that the Board order should not be enforced, points with emphasis to the reasonable possibility that had the Board promptly disposed of its statutory duty to decide the jurisdictional issue their difficulties could easily have been met; that the Board has recognized its own shortcomings by allowing the jurisdictional dispute to dissipate as moot; and that since the entire project at the Forbes site has long ago been completed the entire matter should be considered as moot. These contentions when viewed in combination with a likelihood that the union had a strong position in claiming an allocation of work from Ets-Hokin could be sympathetically viewed. However, mootness of particular questions involved does not warrant a refusal to enforce, N. L. R. B. v. Pennsylvania Greyhound Lines, 303 U.S. 261, 58 S.Ct. 571, 82 L.Ed. 831; N. L. R. B. v. United Brotherhood of Carpenters and Joiners, 10 Cir., 184 F.2d 60, the actions of the union all preceded the initiation of Board proceedings and, in any event, the responsibility of deciding when the objects of the National Labor Relations Act can best be served by prosecution rests with the Board. We will not disturb the discretionary action of the Board in such regard.

The order will be enforced.