**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, Respondent.**

No. 18340.

United States Court of Appeals Ninth Circuit.

July 15, 1963.

Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Hans J. Lehman and Allison Brown, Attys., N. L. R. B., Washington, D. C., for petitioner.

Francis X. Ward, William P. McGowan, Washington, D. C., McCarthy Johnson, Herbert S. Johnson, San Francisco, Cal., for respondent, United Brotherhood of Carpenters and Joiners of America.

Before JERTBERG, Circuit Judge, MADDEN, Judge of the Court of Claims, and DUNIWAY, Circuit Judge.

MADDEN, Judge.

Pursuant to Section 10(e) of the National Labor Relations Act, as amended [29 U.S.C. § 160(e)], the National Labor Relations Board has petitioned this Court for enforcement of its Supplemental Decision and Order issued against United Brotherhood of Carpenters and Joiners of America on September 26, 1961, in Case No. 19–CB–530. This Court has jurisdiction since the unfair labor practices which were the basis for said Order occurred at or near Laurel, Montana, within this judicial circuit.

The National Labor Relations Board (hereinafter referred to as Board) found that the United Brotherhood of Carpenters and Joiners of America (hereinafter referred to as Union) has maintained an illegal closed shop contract with The Refinery Engineering Company (hereafter referred to as Company) during the six month period prior to the filing of charges in this matter. The Board ordered Union to cease and desist from performing, maintaining or enforcing any agreement or understanding with the Company, or any other employer, which requires union membership as a condition of employment, except as authorized by Section 8(a) (3) of the National Labor Relations Act, as modified by the Labor Management Report and Disclosure Act of 1959; and from in any like or related manner restraining employees in the exercise of their rights guaranteed by Section 7 of said Act. The Order further provided that Union post appropriate notices in all locations where notices to its members are customarily posted, and if Company agrees thereto, in places where Company customarily posts notices to the employees covered by the contract between the Company and Union. Union was also directed to publish the notice once in its publications generally distributed to its membership.

Union resists the enforcement of the Board's Order on two asserted grounds: (1) The Board's finding that the Union maintained agreements containing closed shop provisions is not supported by substantial evidence on the record considered as a whole; and (2) In any event, the remedy proposed by the Board is arbitrary, unreasonable, and not appropriate to the unfair labor practice found by it.

As to the first of these objections, Section 10(e) of the National Labor Relations Act provides: "The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive."

From an inspection of the record it appears that there is substantial evidence in the record to support the findings of the Board. On May 5, 1956, Union entered into a written agreement entitled "International Agreement" with Company which contained the following provision:

"We, the firm of The Refinery Engineering Company, agree to recognize the jurisdiction claims of the United Brotherhood of Carpenters and Joiners of America, to work the hours, pay the wages and abide by the rules and regulations established or agreed upon by the United Brotherhood of Carpenters and Joiners of America of the locality in which any work of our company is being done, and employ members of the United Brotherhood of Carpenters and Joiners."

This agreement between Union and Company was in effect during the six months' period preceding the filing of the instant charge against Union on April 14, 1958, by a worker employed by Company on a construction project at or near Laurel, Montana. At the same time, Billings Local 1172 of the United Brotherhood of Carpenters and Joiners of America (hereinafter referred to as Local 1172) maintained an agreement with Billings Contractors Council, Inc., the local employers' group, which provided:

"The party of the first part [Billings Contractors] hereby agrees to employ such members of the party of the second part [Local 1172] who are in good standing with the party of the second part, or who shall signify their intentions to become members and make application for membership. Party of the second part agrees to hold employers harmless against any loss which may accrue

to them in any manner through the operation of this paragraph.

\* \* \* \* \* \*

"ARTICLE IV

"There shall be a shop Steward appointed by the party of the second part, and it shall be the duty of the Shop Steward to see that only members of the party of the second part are in good standing and in the case of accident the job Steward shall see that the injured person or persons shall be promptly taken care of, and report any and all violations of this agreement to both parties interested."

Article X of the "By-Laws and Trade Rules" of Local 1172 then in effect provided, *inter alia*, that a non-union man may be permitted on the job if he gives a cash guarantee that he will join the Local Union, in which case he must give the union a wage assignment unless he can pay the Union at least $10.

Union has stated in its brief that these provisions of the agreement between Local 1172 and the Billings Contractors Council, Inc., and the By-Laws and Trade Rules of Local 1172 are admittedly discriminatory, but urges that they were not incorporated by reference in the International Agreement with Company. There is no support for this contention. Company has clearly bound itself by the "International Agreement" to "abide by the rules and regulations established or agreed upon by the United Brotherhood of Carpenters and Joiners of America *of the locality* in which any work of our company is being done, *and employ members* of the United Brotherhood of Carpenter and Joiners." (Emphasis added). Since Local 1172 was the local representative of Union, the International Agreement incorporated by reference the agreement between Local 1172 and the Billings Contractors Council, Inc. as well as the by-laws and trade rules of Local 1172.

The record, therefore, supports the Board's finding that Union by maintaining its closed shop contract with

Company during the period in question violated Section 8(b) (1) (A) and 8(b) (2) of the National Labor Relations Act.

■ Union terminated its 1956 International Agreement with Company on or before August, 1958, and entered a new agreement with Company which is presumably in conformity with the requirements of the National Labor Relations Act. However, the fact that Union had ceased its unfair labor practices in connection with the Laurel job did not preclude the issuance and enforcement of an order against such conduct. N. L. R. B. v. Local Union No. 751, United Brotherhood of Carpenters, etc., et al., 285 F.2d 633, 638 (C.A.9); N. L. R. B. v. Local 74, United Brotherhood of Carpenters & Joiners of America, 181 F.2d 126, 132–133 (C.A.6), affirmed 341 U.S. 707, 71 S. Ct. 966, 95 L.Ed. 1309; N. L. R. B. v. United Brotherhood of Carpenters, 184 F.2d 60, 63 (C.A.10), cert. denied 341 U.S. 947, 71 S.Ct. 1011, 95 L.Ed. 1371. Board orders have a preventive as well as remedial function, and the Board is entitled to a decree barring resumption of conduct properly found to have been illegal. N. L. R. B. v. Mexia Textile Mills, 1950, 339 U.S. 563, 567, 70 S.Ct. 826, 828, 94 L.Ed. 1067; N. L. R. B. v. International Association of Machinists, 279 F. 2d 761, 767 (C.A.9), cert. den., 364 U.S. 890, 81 S.Ct. 221, 5 L.Ed.2d 187.

■ Union claims that, even if the Board was correct in its finding that Union maintained agreements containing illegal closed shop provisions, the remedy proposed, particularly by way of publication in its official publications of general circulation among its members, is arbitrary, unreasonable and not appropriate to the unfair practice so found. The Court finds no merit in this objection. Company maintains its home office in Tulsa, Oklahoma, and undertakes construction projects throughout the United States. The "International Agreement" between Union and Company was obviously intended to cover Company's employees wherever they were engaged. The Union is active throughout the United States. It would be futile to require only the posting of this notice in the national headquarters of Union, or even to supplement the posting requirement with an order for publication limited to the State of Montana where the instant unfair practice occurred, for only a small portion of the workers potentially affected would be reached.

Union further urges that the order for publication should not be allowed because there was no evidence in the record that any employee had actually been discriminated against under the closed shop contract here involved. But the mere existence of a contract containing illegal union security provisions constitutes a violation of the Act and justifies the issuance of a remedial order by the Board. See N. L. R. B. v. Gottfried Baking Co., 1954, 2 Cir., 210 F.2d 772; N. L. R. B. v. Sightseeing Guides and Lecturers Union, 310 F.2d 40 (C.A.2).

The statutory measure of the Board's authority to remedy against an unfair labor practice is found in Section 10(c) of the National Labor Relations Act [29 U.S.C. Sec. 160(c)] which empowers it upon finding that an unfair labor practice has been committed to order the guilty party to "cease and desist from such unfair labor practice, and to take *such affirmative action* including reinstatement, of employees with or without back pay, *as will effectuate* the policies of the Act." (Emphasis added). It is clearly the policy of the Act that the closed shop shall be abolished. In fashioning a remedy to effectuate this policy, the Board properly took notice that this was not an isolated instance of this type of misconduct, but that the Union had been found by the Board and the courts to have violated the anticlosed shop provisions of the Act on several occasions; The Marley Co., 117 N.L.R.B. 107; Mechanical Handling Systems, 122 N.L.R.B. 396, enforced sub nom. N. L. R. B. v. Local 60, United Brotherhood of Carpenters, etc., 273 F.2d 699 (C.A.7); Millrights Local 2232, 122 N.L.R.B. 300, enforced sub nom. N. L. R. B. v. Millwrights' Local 2232, 277 F.2d 217 (C.A.5), and that unless adequate notice was given of its or-

der in this matter these activities might well continue or be resumed. The requirement that Union publish a notice of the order at least once in its publications generally distributed to its membership is a reasonable requirement in light of the circumstances here involved.

The Board did not abuse its discretion in formulating the order issued against Union, and enforcement of its order is granted.